WALTERS, SHERIFF OF JONES COUNTY *v.* ERNEST

No. 40910          November 3, 1958          106 So. 2d 137

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

*H. C. Moynihan,* Laurel, for appellee.

ARRINGTON, J.

Fred Walters, Sheriff of Jones County, appeals from an order of the chancery court in habeas corpus proceedings holding the judgment and sentence of George Ernest void. Ernest, the appellee, filed petition for writ of habeas corpus on October 17, 1957, before the Chancellor of the Chancery Court of Jones County alleging that he was unlawfully detained and deprived of his liberty without due process of law, and seeking his release from custody. The chancellor issued the writ returnable before him on October 22, 1957. The Sheriff answered that he was holding the appellee in his custody by virtue of a judgment and sentence of the Circuit Court of the Second Judicial District of Jones County, and denied that the appellee was deprived of his liberty without due process of law.

A hearing was had by the chancellor on October 22, 1957, on petition, answer and oral testimony. The facts as found by the chancellor are not challenged by the State. In his opinion, the chancellor stated that the circuit court was in session on October 12, 1957, which was the last day of the September term; that the circuit judge, having been advised of the arrest of George Ernest and his attempt to seize the pistol of the arresting officer, recalled the grand jury, which had been dismissed on October 10, 1957, to investigate. The grand jury reconvened about 1:30 P.M. on October 12, 1957, and at about 2:30 P.M. of the same date, returned an indictment against the appellee, George Ernest, charging him with attempt to commit an assault and battery with intent to

kill. Capias was immediately issued and read to the appellee. He was then immediately brought to the courtroom and arraigned by the district attorney. The appellee plead guilty. ''The circuit judge then asked him if he understood the indictment as read to him and he answered that he did understand. He was then asked by the court did he realize that he could be sent to the penitentiary for a term of years on his plea of guilty to the indictment as read to him. The petitioner answered that he did realize it. He was then asked if he had a lawyer, to which question he answered in the negative.

''There is no testimony that the indictment was explained to him. The circuit judge sentenced the petitioner to the Mississippi State Penitentiary for a term of five years. Petitioner was then returned to the jail.''

The chancellor further found that the appellee was an ignorant man in his late twenties; that on the morning he was arrested and placed in jail he was hit on the forehead above his right eye with some instrument; that his forehead was swollen and bleeding as a result of the blow and that the wound was plainly visible on the habeas corpus hearing ten days later.

''The petitioner was not advised by anyone that he had a right to employ an attorney. In fact, he was not advised by any person whatsoever of his rights in any way. He was asked during the hearing why he did not ask to see some of his people or to see a lawyer, and he replied that he figured it will be of no use. . . . The petitioner, of course, was unlearned in the law and the indictment being couched in language that he could not understand, even though he said he did, he could not himself plead intellingently without some explanation to him.'' The chancellor concluded by finding that the petitioner was deprived of his liberty without due process of law.

An order was entered holding that the judgment and sentence was void and the petitioner was committed to

jail to await action of the circuit court to answer the indictment, bail being set in the amount of $8,000 to be approved by the Sheriff of Jones County.

As heretofore stated, the facts are not in dispute, and we are of the opinion that the evidence and testimony on the hearing fully supports the finding of the chancellor. The record discloses that appellee was placed in jail at 9 A.M.; that the grand jury reconvened at approximately 1:30 P.M.; indictment was returned at 2:30 P.M., and the appellee immediately arraigned and sentenced to the penitentiary. He had no opportunity to confer with friends, family, or counsel. In the case of Guthrie v. State, 190 Miss. 892, 2 So. 2d 145, the appellant was convicted of a misdemeanor. The Court reversed and remanded the case on the ground that the court erred in overruling a motion for continuance. The Court said:

"Section 26 of the Constitution of Mississippi guarantees to every person a fair and impartial trial. A fair and impartial trial includes a reasonable opportunity to prepare for trial. (Here citing authorities) In Coker v. State, 82 Fla. 5, 89 So. 222, the court set forth the right in these words: 'Justice requires, and it is the universal rule, observed in all courts of this country, it is most sincerely to be hoped, that reasonable time is afforded to all persons accused of crime in which to prepare for their defense.' . . . . . ."

In the case at bar, the evidence discloses that the appellee did not confer with anyone, and it is reasonable to assume that if he had been granted time to employ an attorney, he would have done so, since the record reveals that he did have an attorney five days later on October 17, 1957. We are of the opinion that the appellee, being immediately arraigned and sentenced after the return of the indictment without a reasonable opportunity to prepare his defense or make an adequate and proper defense, was deprived of his liberty without

due process of law within the meaning of Section 14 of the Mississippi Constitution of 1890, which provides; "No person shall be deprived of life, liberty or property except by due process of law." Gray v. State, 223 Miss. 554, 78 So. 2d 588; Pittman v. State, 198 Miss. 797, 23 So. 2d 685.

"Dispatch of courts, saving of costs in their operation, speedy trials are commendable in the trial judges, but zeal in these respects must have due regard for the rights of defendants. The right is more valuable than the saving." Cruthirds v. State, supra.

It follows that the decree of the chancellor should be and it is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle and Gillespie, JJ.,* concur.